**In re Cleveland Roosevelt TROWER, Debtor.**

**GRAND FURNITURE DISCOUNT STORES, Appellant,**

v.

**Cleveland Roosevelt TROWER, Appellee.**

**No. B. 76–541–N.**

United States District Court, E. D. Virginia, Norfolk Division.

April 25, 1977.

Leonard D. Levine, Virginia Beach, Va., for appellant.

Alexander P. Smith, Trustee, Norfolk, Va., for appellee.

## MEMORANDUM OPINION AND ORDER

### CLARKE, District Judge.

This case comes before the Court on appeal from an Order of the Bankruptcy Judge which enjoined appellant, Grand Furniture Discount Stores (hereinafter referred to as "Grand") from enforcing a judgment against appellee, Cleveland Roosevelt Trower, a wage earner (hereinafter referred to as "Trower") under Chapter 13 of the Bankruptcy Act. Jurisdiction of this Court is based on Sections 2a(10), 602, and 616 of the Act, 11 U.S.C. §§ 11(a)(10), 1002, and 1016.

The facts of this case are not in dispute. On May 24, 1976, Trower filed a wage earner's plan under the provisions of Chapter 13 of the Bankruptcy Act. The plan was confirmed by the Bankruptcy Judge on June 29, 1976. Grand, as a secured creditor, elected not to participate in the plan, relying instead on its security interest in various items of personal property purchased by debtor. On July 14, 1976, Grand, by an order of the Bankruptcy Court, was granted the right to repossess the goods covered by its security interest.

Instead of retaking the goods however, Grand entered into a new agreement with Trower providing for continued possession by Trower and establishing a payment schedule for the amount still owed. Thereafter, Trower defaulted by failing to make the required payments, and Grand obtained a judgment against him in state court and attempted to enforce the judgment through garnishment of Trower's wages. Trower sought an order in the Bankruptcy Court enjoining Grand's actions against him. Such an order was entered and is the subject of this appeal.

Grand seeks to justify its attempt to garnish Trower's wages despite the control given the Bankruptcy Court over the Chapter 13 debtor[1] by making two arguments. As a secured creditor, Grand asserts that its debt may not be impaired by a Chapter 13 plan. Secondly, Grand argues that, because of the second agreement signed by Trower, it is a subsequent creditor not bound by the limitations of the plan. These arguments misconceive the nature of a Chapter 13 proceeding and ignore the difference between a wage earner's plan under that chapter and straight bankruptcy under Chapters 1–7 of the Act.

It is true that a secured creditor cannot be forced to relinquish his security in a Chapter 13 proceeding. However, by electing to maintain its rights to the security, the secured creditor does lose the right to collect its debt by other means. The

---

1. Section 611 of the Act, 11 U.S.C. § 1011, provides in part:

    "[T]he court in which the [Chapter 13] petition is filed shall . . . have *exclusive* jurisdiction of the debtor and his property, wherever located, of his earnings and *wages during the period of consummation of the plan*." [emphasis added]

    Section 614, 11 U.S.C. § 1014, as supplemented by Rule 13–401, Federal Rules of Bankruptcy, provides an automatic stay of actions against the debtor and authorizes the Bankruptcy Court to enter such orders as are necessary for the protection of the debtor.

    Grand was released from the stay as to direct enforcement of its security interest by the July 14, 1976, order. The other provisions of the stay were unchanged.

essence of all bankruptcy proceedings is to provide secured creditors with the benefit of their security and to marshall all other interests of the bankrupt for the benefit of unsecured creditors. To the extent its claim is unsecured, a creditor may participate in the plan while retaining its security, but only insofar as the debt exceeds the value of the security. See Rule 13–202(c).

■ In the instant case, Grand elected to stay out of the plan and proceeded to have its property removed from the jurisdiction and control of the Bankruptcy Court. This procedure barred Grand from seeking any deficiency because Grand's remedy for collection of the debt remained restricted to repossession of the collateral. The stay mandated by Rule 13–401 was in all other respects still an effective bar to use of collection processes. Thus, Grand was protected by the order permitting reclamation of the collateral in the only respect which its claim deserved protection greater than that provided by the terms of the plan for general creditors. Grand cites numerous cases which hold that a secured creditor is entitled either to his contract benefits or the return of his security. See *Hallenbeck v. Penn Mutual Life Insurance Co.*, 323 F.2d 566 (4th Cir. 1963). This Court has no disagreement with that proposition, but it is of no avail to Grand in this case. Grand sought, by obtaining a judgment and garnishment, to go beyond the simple return of its security—a remedy previously approved by the Bankruptcy Court and still available to Grand. This extra remedy is not supported by the cases cited by Grand.

The whole purpose of a Chapter 13 plan is to allow a debtor to arrange for payment of his unsecured debts from future wages. The procedure advocated by Grand, which would permit secured creditors to take a portion of those wages, would totally frustrate the carefully constructed plan which has already allocated the entirety of the debtor's income to necessary living expenses for the debtor and payments on debts for the general creditors.

Grand's second argument is based on the post-confirmation agreement reached between it and Trower which reaffirmed Trower's debt and permitted him to retain the goods. Grand has likened this situation to the common one which follows a straight bankruptcy where a debtor, in order to retain goods, agrees to a new payment schedule, despite the discharge of the underlying debt in bankruptcy. Such an argument ignores the essential difference between a Chapter 13 proceeding and straight bankruptcy. In straight bankruptcy, a debtor is released from his debts and allowed to go forth and begin a new economic life. His after-acquired assets and post-bankruptcy obligations are generally of no concern to the Bankruptcy Court or his prior creditors.[2]

A Chapter 13 plan, however, allows one who has misused credit available to him, and thereby become overextended, to be rehabilitated without the rigors of bankruptcy. The difference lies in the use of the prospect of future wages as payment for past debts. Under the explicit terms of Chapter 13, the future earnings of a debtor remain in the exclusive control of the Bankruptcy Court, so that it can supervise the consummation of the plan. The payment schedule established by the plan relies upon the debtor's earning capacity. The distinctive feature of Chapter 13 is future wages, and allowing an outside creditor to remove a portion of those wages would disrupt the foundation of the rehabilitation of the debtor sought to be achieved by consummation of the plan.

The Court does not doubt that Chapter 13 debtors often frustrate the consummation of their plans by incurring new debt obligations beyond their abilities to pay. However, as long as the plan is still functioning, it is clear that the debtor is protected from actions to collect debts except with leave of the Bankruptcy Court itself. That Court, under § 611 of the Act, retains jurisdiction over the debtor's property and the stay established by § 614 and Rule 13–401 re-

---

2. Under some circumstances property acquired by a bankrupt after his adjudication does go to the trustee. See, e. g., Section 70a of the Act, 11 U.S.C. § 110(a).

mains effective until relief, on such terms as justice may require, is sought and granted. Grand sought no relief from the stay other than the release of its collateral. Nor did Grand seek to present its claim directly to the Bankruptcy Court. See Rule 13–305 which provides for the presentation of certain post-petition debts.

Grand, as a creditor with actual knowledge of the Chapter 13 proceeding including the stay, may not, absent relief from the stay, use ordinary state court remedies against property of Trower, notwithstanding the renewal of the credit agreement. By leaving Trower in possession of the goods after confirmation of the plan, Grand was limited to three avenues of recovering its due: voluntary payments by Trower under the contract, eventual repossession of the goods after a default on the new contract, or petition for relief in the Bankruptcy Court. These remedies are still open to Grand, insuring that no injustice need result.

In accordance with the foregoing reasoning and the authorities cited, the judgment of the Bankruptcy Judge is AFFIRMED.

Appellee's request for attorney's fees on this appeal is DENIED, although he will be allowed his costs.